CENTER FOR DISABILITY ACCESS
Dennis Price, Esq., SBN 279082
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Schutza**, <br><br> Plaintiff, <br><br> v. <br><br> **Oakland Sutter Hotel, L.P.**, a California Limited Partnership; **Ten Oaks Inc.**, a California Corporation; and Does 1-10, <br><br> Defendants. | Case: 3:18-CV-00947-GPC-BGS <br><br> **Plaintiff's Memorandum of Points and Authorities in Support of Application for Default Judgment by Court Against Oakland Sutter Hotel, L.P., and Ten Oaks Inc., and Request to Affix Fees** |

**TABLE OF CONTENTS**

I. PROCEDURAL POSTURE ------------------------------------------------------------------1

II. CONCISE FACTUAL STATEMENT --------------------------------------------------------1

III. ARGUMENT ------------------------------------------------------------------------------2

    A. The Americans with Disabilities Act ----------------------------------------------3

        1. *The Plaintiff is Disabled* ---------------------------------------------------4

        2. *The Defendant's Business is a Public Accommodation* --------------------4

        3. *The Business Presented Physical Barriers* ------------------------------5

        4. *Summary* ---------------------------------------------------------------5

    B. The Unruh Civil Rights Act -------------------------------------------------------5

IV. THE EITEL FACTORS SUPPORT GRANTING THE MSJ ------------------6

    A. Possibility of Prejudice to Plaintiff --------------------------------------------7

    B. The Merits and Sufficiency of the Plaintiff's Claims & Complaint ---------7

    C. The Sum of Money at Stake -----------------------------------------------------7

    D. The Possibility of Dispute -------------------------------------------------------7

    E. The Possibility of Excusable Neglect-------------------------------------------8

    F. Policy Favoring Decision on the Merits ---------------------------------------8

V. REQUEST TO AFFIX ATTORNEY FEES ---------------------------------------8

VI. CONCLUSION --------------------------------------------------------------------- 10

# TABLE OF AUTHORITIES

**Cases**

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980) ................................................................. 6

*Blackwell v. Foley*,
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) .................................................. 9

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) .................................................................. 5

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ................................................................................ 9

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir.1986) ............................................................. 6, 8

*Geddes v. United Fin.Group*,
  559 F.2d 557 (9th Cir.1977) ................................................................... 6

*Goodwin v. C.N.J., Inc.*,
  436 F.3d 44 (1st Cir. 2006) .................................................................... 8

*Helen L. v. DiDario*,
  46 F.3d 325 (3rd Cir. 1995) .................................................................... 3

*Independent Living Resources v. Oregon Arena Corp.*,
  982 F.Supp 698 (D. Org. 1997) .............................................................. 3

*PepsiCo, Inc. v. California Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................................. 7, 8

*Roberts v. Royal Atlantic Corp.*,
  542 F.3d 363 (2nd Cir. 2008) ................................................................. 3

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,

   194 F. Supp. 2d 995 (N.D. Cal. 2001) ........................................................................ 8

*Vogel v. Rite Aid Corp.*,

   992 F.Supp.2d 998 (C.D. Cal. 2014) ........................................................................... 7

*Wilson v. Haria and Gogri Corp.*,

   479 F.Supp.2d 1127 (E.D. Cal. 2007) .......................................................................... 5

**Statutes**

42 U.S.C. § 12102(2)(A) ................................................................................................. 4

42 U.S.C. § 12102(a) ...................................................................................................... 4

42 U.S.C. § 12181(7)(B) ................................................................................................. 4

42 U.S.C. § 12182(a) ...................................................................................................... 4

42 U.S.C. § 12182(b)(2)(A)(iv) ................................................................................... 3, 4

42 U.S.C. § 12188 .......................................................................................................... 5

42 U.S.C. § 12188(a) ...................................................................................................... 4

42 U.S.C. § 12205 .......................................................................................................... 8

ADAAG § 7.2(1) ............................................................................................................ 5

Cal. Civ. Code § 51(f) ..................................................................................................... 5

Cal. Civ. Code § 52(a) ................................................................................................ 5, 8

Fed. R.Civ.Proc. 8(b)(6) ................................................................................................. 6

## I. PROCEDURAL POSTURE

The complaint was filed in federal court on May 15, 2018. The Proof of Service for Oakland Sutter Hotel, L.P., and Ten Oaks Inc., were filed on September 19, 2018. The default was entered against defendants Oakland Sutter Hotel, L.P., and Ten Oaks Inc., on September 28, 2018 for failure to response to plaintiff's Complaint.

## II. PROPERTY OWNERSHIP & SUFFICIENCY OF SERVICE

In the court's minute order, dated August 22, 2019, the court denied the original application for default judgment, finding that it failed to sufficiently demonstrate that the defendants own the property at issue in the case. Minute Order (Docket Entry 16), p. 3, lines 23-25. Additionally, the court found that the default judgment application failed to explain why service on the UPS store clerk was appropriate. *Id.* at p. 5, lines 1-4. Plaintiff now discuss both issues.

First, the businesses complained of by Mr. Schutza are the Cilantro Taco Shop and Yum Yum Donuts located at 7520 and 7550 El Cajon Blvd., La Mesa, California. These businesses are on the same strip-mall. *See* exhibit 4 (Photos). Although each business has a different street address, the entire property, Parcel Number 469-160-18-00, is recorded with the street address of 7520 El Cajon Blvd., La Mesa, including two parcels and both businesses. *See* Exhibit 5 (Property Records), pp. 2-6. Not only does the grant deed so state but the First American Title Company's public records outline the entire APN property in yellow. *Id.* Thus, there is clear evidence that defendant Oakland Sutter Hotel, L.P. owns the property.

Defendant Ten Oaks, Inc. is the general partner of Oakland Sutter Hotel, LP, who has now changed its name now to Five Hills, LP. Exhibit 5 (Public Records), p. 7. Thus, these are the proper defendants.

And service was proper also. In *Hearn v. Howard*, 177 Cal.App.4th 1193, 1198 (2009), the plaintiff sub-served the defendant by leaving the summons and complaints "with the store clerk," identified as "John Doe" at a post office box rental store. The plaintiff took a default judgment. *Id*. at 1198. The defendant filed a motion to vacate, arguing that she had not bee properly served. *Id*. The trial court denied the motion and an appeal was taken. *Id*. The California appeals court upheld the judgment, finding service proper. First, the court noted that the plaintiff attempted service on three separate occasions to the address reported by the California State Bar to be the defendant's business address, which address happened to be "a private post office box rental store." *Id*. at 1202. The court cited established law that "Ordinarily, two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Id*. The court rejected any arguments that the plaintiff had to establish that the clerk was "closely connected" to the defendant or that the clerk was a manager of some sort. *Id*. Instead, the court found that "service on the clerk at the post office box store where appellate rented a post office box" is sufficient to meet California Civil Code 415.20. *Id*. at 1203.

In the present case, we have almost identical facts. Defendant Oakland Sutter Hotel, LP, which filed a name change to Five Hills, LP on May 3, 2018 lists Raj Singh as the registered agent for service of process and the service address for Mr. Singh as 1547 Palos Verdes Mall, #224, Walnut Creek, CA 945947. *See* Exhibit 5 (Public Records), p. 7. Its general partner, defendant Ten Oaks, Inc., identifies Mr. Sigh as its president. *Id*. Both entities continue to put forward the 1547 Palos Verdes Mall, #224, Walnut Creek, CA 945947 as the service address. Exhibit 1 (Dec of Dennis Price), p. XX, lines XX. This address is a private post office rental box. Service was attempted

three times and then substitute service was effectuated on the store clerk. On essentially identical facts, the *Hearn* court found proper service.

## II. CONCISE FACTUAL STATEMENT

Plaintiff is a paraplegic; he cannot walk and uses a wheelchair for mobility. Exhibit 2 (Dec of Schutza), ¶ 2. Plaintiff has a disabled persons parking placard issued by the State of California. *Id.* at ¶ 3. He drives a specially equipped and modified van. *Id.* Plaintiff's van deploys a ramp so that he can wheel in and out of his vehicle. *Id.* He needs the van accessible access aisle in order to safely transfer to and from his van. *Id.* Due to terrible experiences that Plaintiff has previously suffered, he no longer attempts to park in and use parking spaces without access aisles. *Id.* at ¶ 4. In the past, Plaintiff has parked in regular stalls and found himself trapped outside his vehicle because someone else parked lawfully next to him. *Id.* Plaintiff needs an accessible stall with the access aisle. *Id.*

On February 6, 2018, Plaintiff went to the Cilantro Taco Shop and Yum Yum Donuts located at 7520 and 7550 El Cajon Blvd., La Mesa, California, respectively, to get something to eat and to assess the facilities for compliance with the disability access laws. *Id.* at ¶ 5. When he got there, Plaintiff found that the marked and reserved parking space in front of the Yum Yum donuts did not have any access aisle at all. *Id.* at ¶ 6. Additionally, it had a massive slope in the stall and access aisle that looked like a ramp. *Id.* Likewise, the parking space right in front of the Cilantro Taco Shop had visible slopes running through the stall and access aisle. *Id.* at ¶ 7. Slopes in parking spaces and access aisles create an extra level of difficulty for Plaintiff as he must safely deploy his ramp and then transition to and from the ramp onto the parking surface. *Id.* Plaintiff has dealt with slopes that look just like

the ones he could see in the van parking spaces and had real problems. *Id.* Plaintiff could not safely use this parking space and left to get food elsewhere. *Id.*

After making a complaint to the Center for Disability Access, Evens Louis, an investigator, was tasked to investigate Mr. Scott Schutza's claim that there were no accessible parking spaces at the Cilantro Taco Shop and Yum Yum Donuts located at 7520 and 7550 El Cajon Blvd., La Mesa, California, respectively. Exhibit 3 (Dec of Louis), ¶ 1. Louis went to the Cilantro Taco Shop and Yum Yum Donuts located at 7520 and 7550 El Cajon Blvd., La Mesa, California, respectively, on May 7, 2018, and assessed the parking, took measurements, and took photos of the location. *Id.* at ¶ 2. Louis counted 68 parking stalls available to the public; there were three parking spaces that were marked as reserved for persons with disabilities. *Id.* at ¶ 3.

The parking space located in front of the Yum Yum donut's building did not have any access aisle – it was just a reserved stall. *Id.* at ¶ 4. Louis could see a dramatic slope in this parking stall. *Id.* Using a digital level that he calibrated that morning, Louis found that the accessible parking stall had a slope that measured 12.2%. *Id.*

The marked and reserved parking space next to the Cilantro Taco Shop had an access aisle but it also had visible and significant slopes running within the access aisle and stall. *Id.* at ¶ 5. Using a digital level that he calibrated that morning, the investigator found that this reserved parking stall had a cross slope as high as 8.0% and the access aisle had a cross slope as high as 6.6%. *Id.*

The third reserved parking space also had visible slopes within it, but it was on the other side of the property and did not serve either Yum Yum Donuts or the Cilantro Taco Shop. *Id.* at ¶ 6.

4

The investigator took the photographs attached as exhibit 4 and they truly and accurately depict the facilities at the Cilantro Taco Shop and Yum Yum Donuts on the day that he investigated. *Id.* at ¶ 7; Exhibit 4 (Photos).

Plaintiff has reviewed the photos attached as Exhibit 4 and they are true and correct depictions of the condition of the parking lot at the Cilantro Taco Shop and Yum Yum Donuts located at 7520 and 7550 El Cajon Blvd., La Mesa, California, respectively, on the date he was present. Exhibit 2 (Dec of Schutza), ¶ 8. Due to the lack of compliant accessible parking, Plaintiff has been deterred from further attempting to visit the Cilantro Taco Shop and Yum Yum Donuts until he has been informed that they have brought their facilities into compliance with the access laws. *Id.* at ¶ 9. Plaintiff lives only 15 minutes from this shopping plaza and he is in this area all the time. *Id.* at ¶ 10. Plaintiff would very much like to return to the Cilantro Taco Shop and Yum Yum Donuts and will do so as soon as the facilities are brought in compliance – both to eat and to assess the store for compliance with the ADA. *Id.*

### III. ARGUMENT

Rule 55 of the Federal Rules of Civil Procedure allows for judgment to be had in a case of this type when the defendant fails to answer the Complaint. In this case, defendants Oakland Sutter Hotel, L.P., and Ten Oaks Inc., were served with the Summons and Complaint evidenced by the Proof of Service of Summons on file with this Court. As detailed in the Declaration of Plaintiff's counsel, defendants Oakland Sutter Hotel, L.P., and Ten Oaks Inc., are entities and not infants or incompetent persons or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

Defendants Oakland Sutter Hotel, L.P., and Ten Oaks Inc., were on notice as to what the Plaintiff was seeking as they were served with the Complaint which references with specificity in Plaintiff's Prayer for Relief the fact that Plaintiff was seeking:

> 1. **For injunctive relief**, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under that section.
> 2. **Damages** under the Unruh Civil Rights Act provide for actual damages and a statutory **minimum of $4,000**.
> 3. **Reasonable attorney fees, litigation expenses and costs of suit**, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code §§ 52 and 54.3 and Cal. Civ. Proc. § 1021.5.

See complaint and prayer. The Plaintiff is entitled to the relief that he has prayed for in his Complaint.

**A.     The American with Disabilities Act**

Under Title III of the ADA, the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" is a little misleading:

> Although the term "discrimination" evokes images of active discrimination, e.g., a person is expressly forbidden to enter the premises because of his or her disability, Congress also intended to eliminate more passive forms of discrimination, e.g., a person is physically unable to enter the premises because it lacks a wheel-chair accessible entrance. H.R.Rep. No. 101-485(II) at 99 (1990), reprinted at 1990 U.S.C.C.A.N. 303, 382 (a primary purpose of the ADA is to "bring individuals with disabilities into the economic and social mainstream of American life.")

*Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp 698, fn. 1 (D. Org. 1997). The scope of the Act covers not only intentional discrimination,

but also the discriminatory effects of "benign neglect, apathy, and indifference." *Helen L. v. DiDario*, 46 F.3d 325, 335 (3rd Cir. 1995) (internal quotations omitted).

To succeed on his Title III, ADA claim, the plaintiff must, "establish that (1) he is disabled within the meaning of the ADA; (2) that the defendant's own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2nd Cir. 2008). Under Title III of the ADA, one form of discrimination is defined as failure to remove architectural barriers unless they are not readily achievable to remove. 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. The plaintiff must be disabled. 42 U.S.C. § 12102(a);
2. Defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA. 42 U.S.C. § 12182(a);
3. Defendant's facility must have had unlawful architectural barriers. 42 U.S.C. § 12182(b)(2)(A)(iv);
4. The Plaintiff must have encountered the architectural barrier precluding him full and equal access to the facility. 42 U.S.C. § 12188(a).

In this case, the plaintiff's civil rights were violated because defendants Oakland Sutter Hotel, L.P., and Ten Oaks Inc., failed to provide compliant accessible parking spaces at the Restaurant located at or about 7520 and 7550 El Cajon Blvd., La Mesa, California. Plaintiff will discuss each element, seriatim.

**1.** *The Plaintiff is Disabled*

7

The plaintiff is a man with severe mobility impairments who cannot walk and uses a wheelchair for mobility. There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. *See* 42 U.S.C. § 12102(2)(A) (Defining a physical impairment substantially affecting a major life activity as qualifying as a disability).

### 2. *The Defendant's Business is a Public Accommodation*

Establishments serving food or drink are expressly identified as places of public accommodation and subject to Title III of the ADA. See 42 U.S.C. § 12181(7)(B).

### 3. *The Business Presented Physical Barriers*

In the present case, the lack of compliant accessible parking space is barrier to the plaintiff. Barriers are determined by reference to the American with Disabilities Act Accessibility Guidelines ("ADAAG"). *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).

Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle and parking space is not level. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4. Here the failure to provide level parking at Cilantro Taco Shop and Yum Yum Donuts is a violation of the law.

Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60-inch wide access aisle while van accessible stalls can follow either of two possible configurations: (1) a 132-inch parking stall with a 60-inch adjacent access aisle or (2) a 96-inch parking stall with an adjacent 96-inch access aisle. 2010 Standards § 502.2. Under either configuration, a van accessible parking space provides a minimum of 192 inches of useable space. Here, the parking space in front of Yum Yum Donuts does not have any access aisle.

Whether or not the removal of these barriers is "readily achievable" is an affirmative defense that is waived unless raised. *Wilson v. Haria and Gogri Corp.*, 479 F.Supp.2d 1127, 1133 and fn. 7 (E.D. Cal. 2007) (if a defendant "has failed to plead that barrier removal is not readily achievable in its answer . . . the defense is waived" and, in such circumstances, the plaintiff need "not come forward with any evidence regarding barrier removal....") Here this is not an issue raised in contention. Moreover, the complaint allegation that a defendant failed to meet their barrier removal allegation is sufficient in a default judgment setting. *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998 (C.D. Cal. 2014) (compiling cases and holding that a defendant cannot meet their burden on the issue where they fail to appear and defend).

**4.** *Summary*

The plaintiff is disabled. The defendant's business has unlawful barriers. The defendants failed to remove those barriers and violated the American with Disabilities Act. Plaintiff is entitled to an order requiring defendant to remove those unlawful barriers. *See* 42 U.S.C. § 12188.

**B.    The Unruh Civil Rights Act**

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Under the Unruh Act, a party that discriminates against a plaintiff in violation of Civ. Code § 51 shall be liable for actual damages, up to three times actual damages but "in no case" less than $4,000.00 for each time that he was discriminated against. Cal. Civ. Code § 52(a). In the present matter, the Plaintiff is asking for no more than a single statutory minimum penalty assessment of $4,000.00 as specified in California Civil Code § 52, and the actual attorney fees and costs that he has incurred in the amount of $5,022.50. See declaration of Dennis Price filed contemporaneously with this Application.

## IV. THE EITEL FACTORS SUPPORT GRANTING SUMMARY JUDGMENT

Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *See* Fed. R.Civ.Proc. 8(b)(6); *see also*, *e.g.*, *Geddes v. United Fin.Group*, 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). Nonetheless, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5)

the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. See *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). A consideration of these merits favors granting default judgment.

### A. Possibility of Prejudice to Plaintiff

The plaintiff, a profoundly disabled person, has alleged that he suffers discrimination due to the defendants' failure to comply with the ADA and Unruh. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998 (C.D. Cal. 2014) (granting a default judgment for a disabled plaintiff suing under the ADA and Unruh, relying upon this rationale).

### B. The Merits of the Plaintiff's Claims and Sufficiency of the Claim

These two *Eitel* factors are discussed above under section III of this brief. The plaintiff has sufficiently stated a meritorious claim.

### C. The Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel, supra*, at *8. Here, the plaintiff only seeks a total of $9,442.50. "Courts frequently grant default judgment in Unruh Act and ADA cases and impose similar financial liabilities on the defendant." *Id.* at *9 (finding $13,739.20 was reasonable and

collecting other cases where $10,119.70 and $12,000.00 were also reasonable and, in fact, "a relatively small award of damages" in similar ADA cases).

### D. The Possibility of Dispute

Where there is a properly pled and supported complaint and the defendant has failed to oppose the motion, there is "no factual dispute exists that would preclude the entry of default judgment" and this factors "favors the entry of default judgment . . . ." *Id.* at *9.

### E. The Possibility of Excusable Neglect

While there is always a "theoretical possibility" that the defendant might show up claiming excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

### F. Policy Favoring Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The fact that Rule 55(b) exists demonstrates that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F.Supp.2d at 1177 (reasoning that "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible"). Given that the defendant failed to appear and defend, the seventh *Eitel* factor does not preclude the entry of default judgment.

## V. REQUEST TO AFFIX ATTORNEY FEES

The plaintiff's rights were violated under Title III of the American with Disabilities Act and the Unruh Civil Rights Act. Under both Title III of the ADA and the Unruh Civil Rights Act, a prevailing plaintiff is entitled to an award of reasonable attorney fees. See 42 U.S.C. § 12205; Cal. Civ. § 52(a). As outlined in the declaration of Dennis Price, the plaintiff's billing is reasonable and should be awarded.

## VI. CONCLUSION

The plaintiff respectfully request this Court grant his application for default judgment and issue the proposed judgment.

Dated: September 20, 2019      CENTER FOR DISABILITY ACCESS

By: */s/ Dennis Price*
Dennis Price, Esq.
Attorney for Plaintiff